## COMM'RS OF HIGHWAYS OF BLOOMINGTON TOWNSHIP
### v.
### THE PEOPLE EX REL., ETC.

1. DISCRETION OF HIGHWAY COMMISSIONERS—MANDAMUS.—The duty of highway commissioners as outlined in sections 2 and 5 of Road and Bridge Act of 1883, is general in its terms, and its performance, as to time, manner and extent of repair, is necessarily in some measure conditional and discretionary, and is not the subject of mandamus.

2. PETITION FOR MANDAMUS.—When the answer to a petition for a writ of mandamus is sufficient in law, issues of fact should be formed upon it by further pleading even though it traverses the allegations of the petition, much more when it introduces new matter.

3. MANDAMUS TO COMPEL REBUILDING OF BRIDGE.—A petition for a mandamus to compel highway commissioners to rebuild certain bridges, which on demand they had refused to do. *Held,* that mandamus will not lie in this case inasmuch as the commissioners were without the means and without ability by taxation to procure the means required to build the bridges. The order of the court attempting to control the discretion of the commissioners in the application of the fund on hand is reversed.

4. MANDAMUS—SECTION 14 OF ACT.—Mandamus will not lie to compel highway commissioners to levy a tax under section 14 of the Road and Bridge Act of 1883.

APPEAL from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding. Opinion filed February 25, 1886.

Messrs. TIPTON & BEAVER, for appellant; that when a duty is general, depending on judgment and discretion, mandamus will not lie, cited County of St. Clair v. People, 85 Ill. 400.

As to commissioners' powers: Brunas v. Town of Peoria, 82 Ill. 11; Commissioners v. Newell, 80 Ill. 588.

Messrs. BLADES & NEVILLE, for appellee; cited Hall v People, 57 Ill. 315; County of St. Clair v. People, 85 Ill. 401.

PLEASANTS, J. The petition herein filed Oct. 6, 1884, set forth that upon that part of a public highway in said town of Bloomington which is on or near the center line, north and

south, of section 27, and has been in use for more than twenty years, two bridges over the Little Kickapoo creek were washed away in 1882, and said road has ever since been impassable; that the commissioners of highways of said town have had due notice of the condition; that they have examined said road and bridges at different times and know what it will cost to repair the same; that the petitioner has been informed and believes they have on hand for bridge purposes money enough to build them, and have been notified and requested, but refused and still refuse so to do, and prays that a mandamus may issue, commanding them that they immediately repair said bridges and put the road in condition for use as a public highway, and if they have not money enough for the purpose that a mandamus may issue compelling them to "levy a tax and use the same without unnecessary delay to build good and sufficient bridges," and for such other and further orders in the premises as justice may require.

Respondents answered that if there ever was a highway at the place described it had been abandoned and a new road located on the east line of said section; that to build said bridges and the approaches thereto would cost not less than $3,000, being more than twenty cents on each $100 of the taxable property in the town; that they had no money to build them; that the levy of the road and bridge tax made by them for the current year (1885) was for the full amount of sixty cents on each $100, allowed by law for them to raise, and that the whole would be needed for the ordinary repair of roads and bridges; that they also had levied a tax of twenty cents on each $100, to pay damages allowed and awarded for laying out and vacating roads and for ditching to drain them; that if they had the means it would be wasteful and useless to build said bridges; that the road runs along the bottom of the Little Kickapoo, by which it is twice crossed, and by reason of the character of the soil and frequent washouts would be impracticable; that it is of no public benefit, the travel being fully accommodated by other roads mentioned, and that they have twice made order granting petitions to vacate the same, which were reversed, on appeal by petitioner to three super-

visors, in consideration of promises made by him by way of inducement, which he has refused to fulfill.

The replication denies that said road has been vacated and that petitioner made any proposition to the supervisors, by way of inducement, in writing.

Upon a hearing by the court without a jury on the pleadings and proofs the writ of mandamus was neither awarded nor refused, but an order was made " that the commissioners of highways proceed at the earliest practicable time to put said highway in suitable repair for use as a public highway, and to this end * * * take all the steps provided by statute to raise the largest amount by taxation for road purposes that the ιaw allows, and that out of the amount of taxes that come into their hands from the levy of the taxes of the year 1885, they set apart a sum sufficient to put said highway in a. suitable condition for public travel, and that they proceed to make such repair on said highway as soon as they have the funds to do so, as above provided, unless prevented from beginning at once on the receipt of such funds by the condition of the weather, and that defendants pay the costs of this proceeding," to which exception was duly taken and an appeal prayed and allowed.

As at common law, so under the statute, the office of a mandamus is to compel the performance of some particular act or acts of imperative duty, due by clear right to the relator, which he has properly demanded and the respondent has refused. Where the duty is not specific but general, and its performance as such involves the exercise of judgment and discretion, the writ will not lie. This is elementary law. Bouvier's Law Dict. (Mandamus 1–3–9); Tapping on Mandamus 282.

Section 2 of the Road and Bridge Act of 1883, declares that " The commissioners of highways shall have charge of the roads and bridges of their respective towns, and it shall be their duty to keep the same in repair and to improve them so far as practicable," and by Sec. 5 they are " to exercise such care and supervision over them as the public good may require," which doubtless implies the duty, subject to the same

limitations, of putting them in suitable condition for public use and travel when they get out of repair. But this is general, and its performance, as to time, manner and extent of repair, is necessarily in some measure conditional and discretionary. In these broad terms therefore it is not the subject of mandamus. County of St. Clair v. the People ex rel., 85 Ill. 400–1.

The specific act or acts here sought to be enforced was the rebuilding of these bridges, which had been demanded and refused. Whether it was an imperative duty of the commissioners might depend on one or more of many circumstances. The answer denied it on several distinct grounds; (1) that the road had been abandoned and another substituted; (2) that upon petition duly presented it had been vacated by their order, which was reversed on appeal to three supervisors in consideration of promises made by relator, which he had failed and refused to perform; (3) that they had no money on hand with which to rebuild them, nor any means of procuring the amount necessary for that purpose; (4) that if the bridges were rebuilt, the road, for reasons stated, would still be impracticable during a large portion of the year; (5) that if practicable it was not demanded by public necessity or convenience, which were fully met by others mentioned.

It will be observed that some of these averments were in denial of allegations in the petition, and others presented new matter.

We understand, under the statute, as before, where the answer is sufficient in law, issues of fact should be formed upon it by further pleading, even though it traverses the allegation of the petition—much more when it introduces new matter. Thus, in The People v. The Ill. Cent. R. R. Co., 62 Ill. 512, the court said, "It will be seen that the return traverses the allegations of the writ, which charge," etc. "To this portion of the return the demurrer will therefore be overruled and the relator will have leave to withdraw the demurrer and make an issue of fact." Under the statute the petition takes the place of the alternative writ here referred to, and the answer that of the return. And in The People v. The Town of Waynesville, 88 Ill. 472, it was said, "There

were no pleas filed or other issues made than were presented
by the petition and answer, nor other special issues of fact
formed, but the trial was had before the jury on each allega-
tion contained in the petition. · This was contrary to the well
established practice and should not be sanctioned."

In the case at bar the replications filed only denied, (1) that
the road had been "vacated" (which we think was not intended
to be alleged in the answer), and (2) that any "inducement"
had been offered to the supervisors "in writing" (the mate-
riality of which may be doubted, as the case is not within
the terms of § 51 of the act). So that it was tried as was the
one last above cited, with no issues but those presented by the
petition and answer, and none whatever as to the new matter
introduced by the answer.

Overlooking this irregularity we proceed to notice, what
is sufficient for our present purpose, the question of means
with which to rebuild the bridges.

Without these, clearly, there could be no duty to rebuild,
for it would not be, in the language of the statute, "practi-
cable." The petition represents, upon information and belief,
that respondents had on hand money enough for the purpose.
The answer denies it, and the proof is, without contradiction,
that they had not a dollar. This ends the case for a manda-
mus "that they immediately repair said bridges and (so) put
the road in condition for use as a public highway." And why
not to the whole case, since the alternative prayer—for a man-
damus "that they levy a tax and use the same without unnec-
essary delay to build good and sufficient bridges,"—was not
supported by any averment that they had refured, or been
requested to levy a tax, or could have raised, by such means,
the amount required. But waiving this omission, the answer
averred that before the petition was filed they had levied for
the current year the maximum amount allowed by law for
road and bridge purposes; that in their judgment it would all
be needed for ordinary repairs, and that the bridges and
approaches would cost $3,000. And although no issue was
made upon these averments, evidence was produced in sup-
port of them, from which it appeared by a clear preponder-

ance that the cost of suitable bridges and approaches would be $2,500, and absolutely that the value of the taxable property of the town, outside the city of Bloomington, by the last assessment roll, was $66,486, and the amount levied $4,500, or about 69 cents on the $100, of which the excess over 60 cents was to pay damages allowed and awarded for laying out and vacating roads and for ditching to drain them.

This exhausted their power to levy a tax for road and bridge purposes under § 13 of the statute, and no other is given, so far as we have been able to find or are advised by counsel, except by § 14, which authorizes a further amount, not exceeding four tenths of one per cent., with the consent in writing of a majority of a joint board composed of the commissioners and the town auditors and assessor, "if in the opinion of the commissioners a greater levy (than is allowed by the preceding section) is needed in view of some contingency and they certify the same as therein prescribed. But the record contains no intimation that there was any contingency. Certainly the destruction of these bridges was not, of itself, nor is any suggested as having arisen out of it; and if there had been, the exercise of this power depended, first, upon the discretion of the commissioners to so certify, and second, the consent of one or more of the other town officers mentioned, and therefore it could not be compelled by mandamus.

It is thus seen that they were without the means and without ability by taxation to procure the means required to build these bridges. Nor were they under any obligation of duty to apply to the county board for aid under § 19, if that had been the case attempted to be made by the petition, for the reason that they were not able to "furnish" on the part of the town "one half of the required amount."

The specific and sole object of this proceeding was to obtain a writ of mandamus. We know of no precedent or authority for granting an order of court in lieu of it. The order here made requires the performance of no particular act, but generally that the respondents "proceed at the earliest practicable time to put said highway in suitable repair,"

and to that end "take all the steps provided by the statute to raise by taxation the largest amount that the law allows" and "out of it set apart a sum sufficient" for that purpose. An order so general and uncertain can hardly be said to be in the nature of a mandamus.

As has been shown, the commissioners had already levied the largest amount allowed by the law, and since that, in their judgment, was not as much as was needed for ordinary repairs of roads and bridges, and also to put this particular piece of road in suitable condition for use as a public highway, we apprehend the court could not rightfully control their discretion in the application of the fund.

For the reasons above given the order will be reversed.

Order reversed.